## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| ROBERT EARL RONE<br>        Plaintiff<br><br>v.<br><br>Mobile County District Attorney<br>ASHLEY M. RICH, individually; former<br>Mobile County Assistant District<br>Attorney AMANDA HERREN,<br>individually; MOBILE COUNTY<br>DISTRICT ATTORNEY'S OFFICE;<br>Detective ALEX LOTT, individually;<br>and those individuals working as jailers<br>or medical personnel at Mobile County<br>Metro Jail on May 7, 2021, who delayed<br>or denied medical treatment for Robert<br>Rone while he was being held as a<br>pretrial detainee at the jail<br>        Defendants | CASE NUMBER: 1:22-cv-509<br><br><br>**JURY TRIAL DEMANDED** |

---

### COMPLAINT

---

**COMES NOW** the Plaintiff, ROBERT EARL RONE, and brings this Complaint against the Defendants named above and those yet unnamed but described herein. This action is brought pursuant to the U.S. and Alabama Constitutions and Alabama law, to recover civil damages arising from the arrest and detention of Robert Earl Rone on May 7, 2021, and the malicious prosecution associated with the felony criminal charge that led to the arrest and detention of Robert Earl Rone.

1

## Jurisdiction and Venue

This action arises under the Fourth Amendment and Fourteenth Amendment to the U.S. Constitution, Title 42 U.S.C. §1983, and Alabama law.   The Court has jurisdiction over this case pursuant to 28 U.S.C. §1331 and 1343(a)(4).

Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) as all of the relevant acts and omissions alleged herein occurred within Mobile County, Alabama; the Mobile City Clerk was given written notice on June 17, 2021, within six (6) months of Rone's arrest, that Rone intended to file this action (see Ex. A - attached); the Mobile County Commission was given written notice on May 4, 2022, within twelve (12) months of Rone's arrest, that Rone intended to file this action (see Ex. B - attached); the parties are citizens of the State and District of Alabama; and this Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

## Parties

1.      ROBERT EARL RONE ("Rone") is over the age of nineteen (19) and is a resident of Mobile County, Alabama. Rone was a resident of Mobile County, Alabama and a practicing attorney and member in good standing of the Alabama State Bar at the time of his arrest that resulted in this action.

2

2.     Defendant, ASHLEY M. RICH (hereinafter "Rich" or "Ashley Rich"), is over the age of nineteen (19) and is, upon information and belief, a resident of Mobile County, Alabama. Rich was, at all times pertinent to the claims made herein, the District Attorney of Mobile County, Alabama and the ultimate policymaker, responsible for operation and management of the Mobile County District Attorney's Office. Rich was the supervisor of Defendant Amanda Herren at the time of Rone's arrest.

3.     Defendant, AMANDA HERREN (hereinafter "ADA Herren" or "Herren"), is over the age of nineteen (19) and is, upon information and belief, a resident of Mobile County, Alabama. Herren was, at all times pertinent to the claims made herein, an Assistant District Attorney of Mobile County, Alabama.

4.     Defendant, MOBILE COUNTY DISTRICT ATTORNEY'S OFFICE, is a government entity that had Ashley Rich as its ultimate policymaker and Amanda Herren as its employee at the time of Robert Rone's arrest.

5.     Defendant, ALEX LOTT (hereinafter "Detective Lott" or "Lott"), is over the age of Nineteen (19) and is a resident of Mobile County, Alabama. Lott was, at all times pertinent to the claims made herein, a police detective for the City of Mobile, Alabama and was the officer that obtained a warrant for the arrest of Robert Rone.

6.    Other Defendants, whose identities are currently unknown, either conspired with the named Defendants in the actions alleged herein, or worked as jailers, medical personnel, or supervisors at Mobile County Metro Jail and were responsible for delaying or denying medical treatment for Rone while he was a pretrial detainee on May 7, 2021 at Mobile County Metro Jail.

**Facts and Allegations**

7.    On May 7, 2021, Rone was a sixty-seven-year-old practicing attorney, living in Mobile, Alabama and a member in good standing with the Alabama State Bar.

8.    At about noon on May 7, 2021, Rone was leaving his house to go to his office when he saw his nineteen-year-old son, Thomas Rone, who lived there, in a car in front of the house with three other young males.

9.    Rone said hello to the boys in the car and asked his son to come to Rone's car, parked in the front yard, and speak with him for a minute.

10.    The Rones agreed to meet at Hank Aaron Stadium later that afternoon to watch a baseball game in which Robert Rone's nephew was playing for Mobile College.

11.    Robert Rone then left for work, but within ten (10) minutes received messages from one of Thomas Rone's friends to "Come home" "Now please."

12.     Rone returned home to find about six unmarked police vehicles in front of his house and his son and the other three boys handcuffed.

13.     Rone was told that Thomas Rone was under arrest for two domestic violence charges and that officers would let Rone know more in a few minutes.

14.     After several minutes, Rone went into his house and brought out a package of bottled water for the officers.

15.     Eventually, a marked police vehicle came, and Thomas Rone was placed in it and transported to metro jail.

16.     Robert Rone was then told by an officer that there was also a warrant for his arrest.

17.     Robert Rone was then arrested in front of his home, handcuffed, placed in the rear of a marked Mobile Police vehicle and taken to Mobile Metro Jail.

18.     Before being placed in the vehicle, Rone informed officers that he had a medical condition that caused him to sometimes have spasms in his esophagus, and he requested he be allowed to keep a bottle of the water with him in case the spasms started.

19.     Officers told Rone that the transporting officer would have some water if Rone needed it on the way to Metro.

5

20.     After about ten (10) minutes in the back of the hot police vehicle, Rone started to have esophageal spasms and requested some water.

21.     The transporting officer pulled over and gave Rone a bottle of water and Rone sipped on the water to help control the spasms.

22.     Upon arrival at Mobile Metro Jail, intake personnel told Rone he could not keep the water with him and Rone explained that he needed it for the spasms in his esophagus.

23.     Rone had a few pills in his pocket that had been prescribed for him to control the spasms and he asked if he could take one of the pills. Rone suggested that jail personnel could call his doctor to verify the purpose of the medication.

24.     Rone had very recently stopped taking the medication, after taking it for over twenty (20) years, because he had not experienced the esophageal spasms for about a year and had slowly cut down the dosage until he stopped completely, but his doctor suggested he keep a few pills with him in case of an emergency.

25.     Jail personnel refused to give Rone the medication and placed him in a small cell.

26.     The spasms continued to get worse and when Rone asked a white female guard to please give him some water to help calm the spasms, she replied, "I'm not your waitress."

27.     Rone was eventually taken to the medical area where his blood pressure was checked and found to be extremely high, at which time jail personnel called an ambulance to transport Rone to a hospital but continued to deny him water and medication.

28.     While waiting on the ambulance, after asking several people for water and explaining that it would calm the spasms, Rone was given a very small amount of water in a cup.

29.     Some of the spasms were severe enough to cause Rone to make a grunting sound during the spasm and he heard one of the medical personnel make a comment, asking if he was having a baby out there.

30.     Rone was transported to a hospital where he was given medication that stopped the spasms, and he was then transported back to jail where he bonded out and was released at about 8:00 p.m.

31.     After being released from jail, Rone began having esophageal spasms regularly again and developed sensitivity on the right side of his face and head which led him to make an appointment with his primary physician who, after examining Rone, referred him to a neurologist.

32.     However, the same day he saw his primary physician, Rone noticed what appeared to be a large pimple on the back of his neck which spread rapidly that

evening and during the night, so he made another appointment with his primary physician, thinking he had gotten bed bugs from wearing jail clothing.

33.    The physician diagnosed Rone with shingles, which caused very painful sores and blisters on the right side of his head, neck and chest that lasted about six weeks.

34.    Rone had never had shingles before and has not had them since, but he has lingering nerve damage on the side of his head caused by the shingles and continues to have esophageal spasms for which he again has to take medication on a regular basis which makes him drowsy and affects his quality of life.

35.    When Robert Rone and Thomas Rone were arrested on May 7, 2021, Thomas Rone was on bond pending trial for an assault first degree case that occurred on July 7, 2019.

36.    Detective Alex Lott was the investigating officer in the 2019 assault case and is the officer who obtained arrest warrants on May 5, 2021 for Robert Rone and Thomas Rone.

37.    An immunity hearing was scheduled for May 11, 2021 to determine if Thomas Rone acted in self-defense regarding the 2019 assault case.

38.    Robert Rone would have been a witness at the immunity hearing and his testimony would have been favorable to Thomas Rone.

39.     The State was not prepared to go forward with the immunity hearing on May 11, 2021 because the alleged victim in that case, Fernando Descailleaux, was not available to testify on that date at the hearing.

40.     The State had already been granted one continuance of the immunity hearing due to Descailleaux not being available, and there was a likelihood that the assault case would have been dismissed if Descailleaux was not there on May 11, 2021.

41.     On May 10, 2021, Thomas Rone's attorney postponed the immunity hearing because of the May 7, 2021 arrests of Robert Rone and Thomas Rone.

42.     The charge against Robert Rone was that he allegedly intimidated a witness and told her what to say during her testimony in the Thomas Rone assault case.

43.     The witness Rone allegedly intimidated was Lauren Butts (hereinafter "Butts") who was dating Thomas Rone at the time Thomas Rone was arrested for assault on July 7, 2019.

44.     Testimony at the December 2021 trial on the 2019 assault case showed that, then seventeen-year-old Thomas Rone was physically attacked and beaten in his bedroom by his thirty-two-year-old cousin, Fernando Descailleaux, and after being severely beaten, Thomas Rone went to the kitchen, where he picked up a knife

before attempting to return to his bedroom and either cut Fernando in self-defense or accidentally, as Fernando rushed out of a bathroom adjacent to Thomas Rone's bedroom.

45.     Butts told police on July 7, 2019 that she had come to see Thomas Rone that morning and was in Thomas Rone's bedroom with him and his mother when his cousin, Fernando, pushed Thomas Rone's mother out of the way and attacked Thomas. Butts said she left the room and did not see Fernando get cut. Her testimony regarding these facts has never changed.

46.     Butts was also arrested on July 7, 2019, as a co-defendant of Thomas Rone, because she took Thomas to her grandmother's house after the fight with Fernando and did not return right away.

47.     Although Thomas Rone was eventually found not guilty of the 2019 assault, Butts accepted a youthful offender plea in early September 2020.

48.     Around September 7, 2020, Butts was still dating Thomas Rone and she approached Robert Rone at his home and asked him to get her youthful offender plea overturned, claiming her attorney pled her guilty to Y.O. without her fully understanding what she was doing. During this conversation, Butts also told Robert Rone that the police had tried to get her to say that Thomas Rone physically abused her.

49.    Robert Rone told Butts he could not represent her but agreed to speak to her attorney about her concerns.

50.    About ten (10) days later Robert Rone spoke with Butts' attorney and then, on September 18, 2020, Rone approached Thomas Rone and Butts in a bathroom at Rone's house to discuss his conversation with Butts' attorney and to ask Butts about her previous statement that police had tried to get her to say Thomas Rone physically abused her.

51.    The September 18, 2020 conversation took place in a bathroom at the Rones' house while Thomas Rone and Butts were getting ready to go out on a date.

52.    Robert Rone recorded the conversation on his cell phone.

53.    This bathroom conversation turned out to be the basis of the felony charge against Rone for allegedly intimidating Butts during the conversation to influence her testimony in Thomas Rone's assault case from 2019.

54.    Thomas Rone and Butts broke up in October of 2020 and Butts soon began dating a man named Isaiah Roberts.

55.    In January of 2021, while in the relationship with Isaiah Roberts, Butts began dating Thomas Rone again, but without Isaiah Roberts' knowledge.

56.    Around the end of April or beginning of May 2021, Isaiah Roberts was aware that Butts was receiving calls and texts from Thomas Rone.

57.    In order to cover-up her affair with Thomas Rone, Butts told Isaiah Roberts that Thomas Rone was bothering or harassing her.

58.    On May 3, 2021, Isaiah Roberts contacted either the police or the District Attorney's Office and reported that Thomas Rone was harassing Butts.

59.    On May 4, 2021, Detective Alex Lott and Assistant District Attorney Amanda Herren went to interview Butts at her grandmother's house about the allegations made by Isaiah Roberts.

60.    During this interview with Butts on May 4, 2021, and during the following days leading up to Robert Rone's arrest on May 7, 2021, Defendants Ashley Rich, Alex Lott, and Amanda Herren conspired to fabricate and prosecute a felony criminal charge against Robert Rone in order to discredit his testimony, or prevent him from testifying, at Thomas Rone's immunity hearing on May 11, 2021.

61.    Lott prepared a report that describes what Butts allegedly told him and ADA Amanda Herren when they interviewed Butts on May 4, 2021. That report is dated May 5, 2021 and is titled "Incident # M2210500411".

62.    According to Lott's May 5, 2021 report, Butts said Robert Rone and Thomas Rone cornered Butts in a bathroom at the Rones' house and told her what to say to support a claim of self-defense by Thomas Rone regarding his assault charge from July 7, 2019.

63.     According to Lott's May 5, 2021 report, Butts said they told her to say that Thomas was putting his pants on when Fernando attacked him again, causing Thomas to act in [s]elf defense.

64.     Rich, Lott, and Herren obtained a felony arrest warrant and caused Robert Rone to be arrested based on the statements allegedly made by Butts that Rone cornered her in a bathroom and told her to say, "Thomas was putting his pants on when Fernando attacked him again, causing Thomas to act in [s]elf defense."

65.     Butts told Lott and Herren during the May 4, 2021 interview that Robert Rone had recorded the bathroom conversation on which the charge against Rone was based.

66.     Lott noted in his report titled Incident # M2210500411, dated May 5, 2021, that Butts said the bathroom conversation was recorded by Rone on his cell phone.

67.     No attempt was made by Defendants Rich, Herren or Lott to obtain Rone's cell phone or the recording of the bathroom conversation from Rone's cell phone prior to his arrest and prosecution.

68.     If Defendants Rich, Lott, or Herren had listened to the recording of the bathroom conversation, which they could have easily obtained, they would have known there was no basis for the criminal charge against Rone.

69.    If Butts did not make the alleged statement against Rone, the statement was fabricated by Lott, Herren, or both, who then colluded with other members of the District Attorney's Office, to prosecute Rone based on the fabricated statement.

70.    If Butts made the alleged statement against Rone, Lott acted in collusion with one or more of defendants Rich and Herren, and possibly other members of the District Attorney's Office, to obtain a felony warrant for Rone's arrest while intentionally disregarding pertinent exculpatory evidence of Rone's innocence that was readily available, the bathroom recording, which would have also proved that Butts' statement to Lott and Herren was unreliable.

71.    The District Attorney's Office issued a charging document, based on false information, which Lott then used to obtain the warrant for Rone's arrest.

72.    Members of the District Attorney's Office conspired with Lott to produce a charging document against Rone that they knew, or should have known, was based on false information.

73.    Lott and his co-conspirators withheld exculpatory information from Magistrate Shelly Lee in order to obtain the warrant for Rone's arrest based on the false charging document.

74.     At Rone's preliminary hearing on June 17, 2021, the recording of the bathroom conversation was played by Rone, Judge George Hardesty found that there was no probable cause in Rone's case, and the case was dismissed.

## CLAIMS

### Count 1
### Fourth Amendment Violation – Malicious Prosecution
**----------**
### Ashley Rich, Amanda Herren, Alex Lott and As Yet Unidentified Employees of the Mobile County District Attorney's Office

75.     The Plaintiff realleges all the allegations of the foregoing paragraphs and incorporates the same herein by reference.

76.     Defendants Herren and Lott, on or about May 4, 2021, with permission or direction from Ashley Rich, went to the residence of Lauren Butts to investigate allegations made by Isaiah Roberts that Thomas Rone was harassing Butts.

77.     While interviewing Butts, the Defendants discussed how they could get Robert Rone involved in the investigation and questioned Butts about whether Robert Rone had harassed her.

78.     Butts told the Defendants that Robert Rone had spoken to her and Thomas Rone in a bathroom at Robert Rone's home in March of 2020 and had recorded the conversation.

79.    Neither Herren nor Lott attempted to obtain the recording of the bathroom conversation, which would have proven Rone's innocence, and in doing so they intentionally disregarded pertinent exculpatory evidence.

80.    Lott either misquoted Butts to make it appear that Rone had committed the crime of intimidating a witness, or he intentionally failed to follow policy, procedure and law that required him to investigate Butts' allegations before relying on those allegations alone to obtain a felony warrant for Rone's arrest.

81.    Without conducting any further investigation into whatever allegations Butts made during the interview, and without investigating whether Butts was credible or reliable, Rich, Herren, Lott, and possibly others, participated in obtaining a warrant for Rone's arrest, had Rone arrested, and prosecuted him on a felony charge.

82.    Due to the acts of Ashley Rich, Amanda Herren, Alex Lott, and possibly others, Robert Rone was arrested and prosecuted for intimidating a witness. even though he was completely innocent.

83.    After his arrest, while being transported to the jail, Rone began having esophageal spasms that continued at the jail for several hours before he was transported to a hospital and given medication that stopped the spasms. Since his arrest and incarceration, the spasms have continued and Rone must take medication

in order to control the spasms. Rone suffered fear, humiliation, and a severe feeling of helplessness during his arrest and incarceration. Within days of his release from jail, Rone developed shingles on his head, neck, and chest as a result of the stress caused by his arrest and incarceration. This was extremely painful, and the blisters lasted over a month. Rone continues to suffer nerve damage as a result of this shingles outbreak. Rone suffered damage to his personal and professional reputation. Rone incurred legal and medical expenses and will incur future medical expenses due to the acts of the Defendants. Rone suffered extreme mental anguish and emotional distress due to the acts of the Defendants and still suffers mental anguish at the time of filing this Complaint.

**Count II**
**Fourth Amendment Violation – Malicious Prosecution**
**----------**
**The Mobile County District Attorney's Office**

84.    At the time of Rone's arrest, this Defendant had a policy, custom or practice of allowing Rich and her assistant district attorneys to determine probable cause and issue charging documents to police officers who then presented the charging documents to magistrates that were untrained and unqualified to make probable cause determinations.

85. This Defendant, through its officers, knew or should have known, that some of the magistrates to whom the charging documents were presented were not trained or qualified to make probable cause determinations.

86. This Defendant, through its officers, knew or should have known, that the magistrates were instructed to issue a warrant if a charging document was presented to them, whether there was enough information in the charging document to allow for a meaningful determination of probable cause.

87. Employees of the Mobile County District Attorney's Office were making probable cause determinations instead of a judge or magistrate and the magistrates were only acting as rubber stamps for the District Attorney's Office.

88. This official policy or custom of the Mobile County District Attorney's Office resulted in deliberate indifference to citizen's, including Rone's, right to have a neutral and detached judge or magistrate make a meaningful determination of whether sufficient probable cause existed to arrest them, and it was the moving force behind Rone's injuries.

89. As a result of the policy, custom or practice described in this claim, Robert Rone suffered the injuries and damages described in Paragraph 83 above.

## Count III

### Fourth Amendment Violation – Supervisor Liability
----------
### Ashley Rich in Her Individual Capacity

90.    The Plaintiff realleges all the allegations contained in the foregoing paragraphs and incorporates the same herein by reference.

91.    Ashley Rich was the supervisor of Amanda Herren at the time of Rone's arrest.

92.    As District Attorney of Mobile County, Alabama, Rich implemented and condoned an official policy, custom or practice, that allowed her assistant district attorneys to determine probable cause and have Rone and others arrested without first having a neutral and detached judge or magistrate review the facts to determine if there was, in fact, probable cause to arrest them.

93.    This policy, custom or practice implemented by Rich resulted in Herren acting with deliberate indifference to Rone's constitutional right to be free from malicious prosecution; or Rich directed Herren to take the action that resulted in the violation of Rone's constitutional right to be free from malicious prosecution; or Rich knew that Herren would take the action that resulted in the violation of Rone's constitutional right to be free from malicious prosecution and failed to stop Herren from doing so.

94.     As a result of Ashley Rich's conduct alleged in this claim, Robert Rone suffered the injuries and damages described in Paragraph 83 above.

### Count IV

### Fourteenth Amendment Violations
### Deliberate Indifference to a Serious Medical Need
----------
### As Yet Unknown Medical Personnel and Jailers at Mobile County Metro Jail

95.     The Plaintiff realleges all the allegations contained in the foregoing paragraphs and incorporates the same herein by reference.

96.     During the time Rone was a pretrial detainee at the Mobile County Metro Jail, the employees there owed to Robert Rone those rights under the Fourteenth Amendment to the U.S. Constitution accorded to all U.S. citizens detained upon a governmental entity's authority as pretrial detainees, including the right to receive prompt and adequate medical attention to his serious medical need.

97.     Unknown medical personnel and jail personnel refused to give Rone medicine or even water to relieve the esophageal spasms he was having while detained. One of these defendants was a nurse who came to the docket room and spoke with Rone about his condition. Another was a jailer who told Rone she was not his maid after he begged her for water to help relieve his spasms.

98.    As a result of the Defendants' conduct alleged in this claim, Robert Rone suffered the physical injuries and damages described in Paragraph 83 above.

### Count V

### Outrage (Intentional Infliction of Emotional Distress)
### (State Law Claim)
### ----------
### Ashley Rich, Amanda Herren, Alex Lott

99.    The Plaintiff realleges all the allegations contained in the foregoing paragraphs and incorporates the same herein by reference.

100.   Defendants Ashley Rich, Amanda Herren and Alex Lott knew that having Rone arrested, especially for a felony offense that could put his career as an attorney in jeopardy, would cause him severe emotional distress that no reasonable person could be expected to endure.

101.   If Rich was not directly involved in the acts of obtaining a warrant against Rone under false pretenses, or in his prosecution, she is still liable for this claim of outrage as the principal or supervisor of Herren.

102.   As a result of the Defendants' conduct alleged in this claim, Robert Rone suffered the physical injuries and damages described in Paragraph 83 above.

**Count VI**

**Civil Conspiracy**
**(State Law Claim)**
**----------**
**Ashley Rich, Amanda Herren, Alex Lott**

103.   The Plaintiff realleges all the allegations contained in the foregoing paragraphs and incorporates the same herein by reference.

104.   Defendants Ashley Rich, Amanda Herren and Alex Lott conspired and worked together to use fabricated, unsubstantiated allegations that they should have known were false, to obtain a warrant for Rone's arrest in order to discredit his testimony or prevent him from testifying in an immunity hearing that was scheduled for May 11, 2021.

105.   The Defendants carried out their conspiracy by fabricating a felony charge against Rone, issuing a charging document based on the fabricated charge, presenting the charging document containing false information to a magistrate without giving the magistrate sufficient information to determine if there was probable cause to issue a warrant, obtaining a warrant for Rone's arrest, and prosecuting the case against Rone until Mobile County District Court Judge George Hardesty found there was no probable cause on June 17, 2021.

106.   The Defendants accomplished the goal of their conspiracy, and the result was that Rone was arrested and the May 11, 2021 immunity hearing was cancelled.

107.   As a result of the Defendants' conduct alleged in this claim, Robert Rone suffered the injuries and damages described in Paragraph 83 above.

## **RELIEF SOUGHT**

As relief, the Plaintiff seeks the following:

a)   That he be awarded an Order granting judgment against each Defendant;

b)   That he be awarded such damages as are allowed by law against the Mobile County District Attorney's Office and as a jury shall determine from the evidence he is entitled to recover;

c)   That he be awarded against Defendants, Ashley Rich, Amanda Herren, Alex Lott, and any other as yet unidentified defendants, such compensatory and punitive damages as a jury shall determine from the evidence that he is entitled to recover on his 42 U.S.C. § 1983 claims and his state law claims;

d)   That he be awarded prejudgment and post judgment interest at the highest rates allowed by law;

e)   That he be awarded the costs of this action and attorney fees, as allowed under Title 42 U.S.C. § 1988; and

f)   That he be awarded such other and further relief to which he is justly entitled.

**PLAINTIFF REQUESTS A TRIAL BY JURY OF ALL ISSUES
TRIABLE BY A JURY**

Dated:   December 22, 2022

ROBERT EARL RONE, *Pro se Plaintiff*

**STATE OF ALABAMA**

**COUNTY OF MOBILE**

Personally appeared before me, a Notary Public, in and for said County and State, ROBERT EARL RONE, who is known to me, and who, after being first duly sworn, deposed and said that he has read the foregoing Complaint and, to his knowledge, information and belief, the statements contained therein are true and correct.

GIVEN under my hand and official seal this 22nd day of December 2022.

NOTARY PUBLIC, STATE AT LARGE

My Commission Expires: 12-08-2024

Respectfully submitted,

*/s/ Robert E. Rone*
***Pro se Attorney for Plaintiff***
ROBERT E. RONE (RONER4107)
3808 Moffett Road
Mobile, Alabama 36618
Telephone:   251-460-4405
Cellular:   251-605-4503
Facsimile:   251-460-4406
Email:   *robertrone333@aol.com*

24

Please serve Defendant, <u>**ASHLEY RICH**</u>, via *private process server* at the following address:

> Ashley Rich
> Mobile County District Attorney's Office
> Mobile Government Plaza
> 205 Government Street
> Mobile, Alabama 36602

Please serve Defendant, <u>**AMANDA HERREN**</u>, via *private process server* at the following work address:

> Amanda Herren
> CUNNINGHAM BOUNDS LLC
> 1601 Dauphin Street
> Mobile, Alabama 36604

Please serve Defendant, <u>**MOBILE COUNTY DISTRICT ATTORNEY'S OFFICE**</u>, via *private process server* as follows:

> Mobile County District Attorney's Office
> c/o Ashley Rich
> Mobile Government Plaza
> 205 Government Street
> Mobile, Alabama 36602

Please serve Defendant, <u>**ALEX LOTT**</u>, via *private process server* at the following address:

> Alex Lott
> 3628 Vista Ridge Drive
> Mobile, Alabama 36693

Please serve a courtesy copy via *certified mail* to:

> Alabama Attorney General Steve Marshall
> ALABAMA ATTORNEY GENERAL'S OFFICE
> 501 Washington Avenue
> Montgomery, Alabama 36104

25