IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ROBERT EARL RONE,  )  | |
|     Plaintiff,  )  | |
| )  | |
| v.  )  | CIVIL ACTION NO. 1:22-00509-TFM-N |
| )  | |
| ASHLEY M. RICH, *et al.*,  )  | |
|     Defendants.  )  | |

## REPORT AND RECOMMENDATIONS

This action is before the Court[1] on a Fed. R. Civ. P. 12(b)6) motion to dismiss

with memorandum in support jointly filed by Defendants Ashley Rich and Amanda

Herren (collectively, the "DA Defendants") on June 1, 2023. (Docs. 35, 36). The motion

is briefed and ripe for disposition. (Docs. 35, 36, 41, 45). For the reasons stated herein,

the undersigned **RECOMMENDS** the DA Defendants' motion be **GRANTED**.

## I.   *Procedural History*

Plaintiff Robert Rone, who is proceeding *pro se*,[2] initiated this action by filing

a complaint pursuant to 42 U.S.C. § 1983 on December 22, 2022. (Doc. 1). The

operative Second Amended Complaint ("SAC") was filed May 6, 2023 with leave of

Court. (Docs. 27-31). The SAC brings five counts, collectively asserting federal and

state causes of action against varying groups of the six named defendants – former

Mobile County District Attorney Ashley Rich ("DA Rich"), former Assistant Mobile

---

[1] The assigned District Judge has referred this action to the undersigned Magistrate Judge for consideration and disposition or recommendation on all pretrial matters as may be appropriate under 28 U.S.C. § 636(b)(1) and in accordance with S.D. Ala. GenLR 72. (Docs. 12, 32).

[2] While Rone is a *pro se* litigant, he is also an attorney and member of the Alabama State Bar. (Doc. 31, PageID.287). Thus, he does not receive the liberal construction typically afforded to *pro se* litigants. *Bowers v. Bd. of Regents of the Univ. Sys. of Ga.*, 509 F. App'x 906, 908 n.1 (11th Cir. 2013).

County District Attorney Amanda Herren ("ADA Herren"), Mobile Police Department ("MPD") Detective Alex Lott ("Detective Lott"), Mobile County Metro Jail ("MCMJ") employees Kiesha Pettway, Felecia Crawford and Sophia Barnes – as well as one "Jane Doe" and two groups of fictitious defendants. (Doc. 31). The SAC includes:

**Count I**: Asserts a Fourth Amendment malicious prosecution claim against DA Rich, ADA Herren, Detective Lott and fictitious defendants[3] in their respective individual capacities.

**Count II**: Asserts a Fourth and Fourteenth Amendment supervisory liability claim against DA Rich in her individual capacity.

**Count III**: Asserts a Fourteenth Amendment claim of deliberate indifference to a serious medical need against Pettway, Crawford, Barnes, Jane Doe and fictitious defendants[4] in their respective individual capacities.

**Count IV**: Asserts a state law claim for outrage against DA Rich, ADA Herren and Detective Lott in the respective individual capacities.

**Count V**: Asserts a state law claim for civil conspiracy against DA Rich, ADA Herren and Detective Lott in their respective individual capacities.

(*Id.*). The DA Defendants filed a motion to dismiss with memorandum in support on June 1, 2023. (Docs. 35, 36). Detective Lott filed an answer the same day. (Doc. 37). A briefing schedule was entered on the DA Defendants' motion, to which Plaintiff timely responded and the DA Defendants timely replied. (Docs. 38, 41, 45). The motion became ripe and was taken under submission June 24, 2023. (*See* Doc. 38).[5]

---

[3] Plaintiff describes this group of fictitious defendants as "As Yet Unidentified Employees of the Mobile County [DA's] Office." (Doc. 31, PageID.298).

[4] Plaintiff describes this group of fictitious defendants as "As Yet Unknown Medical Personnel and Jailers at Mobile County Metro Jail," who "were responsible for delaying or denying medical treatment for Rone while he was a pretrial detainee on May 7, 2021 at Mobile County Metro Jail." (Doc. 31, PageID.289, 304).

[5] Defendants Pettway, Barnes and Crawford have also filed motions to strike, or in the alternative, dismiss, Count III of the SAC as a shotgun pleading, which have been fully briefed, are ripe for

## II.    *Factual Background*

The facts underlying this action involve not only Plaintiff's arrest and prosecution, but also a separate – albeit intertwined – criminal case against his son, Thomas Rone. The relevant facts begin on July 7, 2019, when an altercation occurred at the Rone family home between Thomas and his cousin Fernando. (Doc. 31, PageID.289-98). Thomas stabbed Fernando during this incident, which resulted in Thomas's arrest and assault charges. (*Id.*). Thomas's girlfriend Lauren Butts was on site when the incident occurred and took Thomas away from the scene after the fact, which led to Butts being charged as a co-defendant. (*Id.*). Butts accepted a youthful offender plea in September 2020. (*Id.*). Thomas took his case to trial and was found not guilty in December 2021. (*Id.*). Detective Lott, a Defendant here, was the investigator assigned to Thomas's assault case. (*Id.*).

On or about September 7, 2020, Butts approached Plaintiff regarding her plea agreement because she had not understood its consequences and sought Plaintiff's help to get it overturned. (*Id.*). During this conversation, Butts said "the police had tried to get her to say that Thomas Rone physically abused her." (*Id.*). Plaintiff agreed to speak with Butts' attorney. (*Id.*). On September 18, 2020, Thomas and Butts were at the Rone's home when Plaintiff approached them in a bathroom "to discuss his conversation with Butts' attorney and to ask Butts about her previous statement that police had tried to get her to say Thomas Rone physically abused her." (*Id.*).[6] This

---

disposition and will be addressed by separate order. (*See* Docs. 39, 44, 48, 51, 53, 54, 55, 56, 57).

[6] The undersigned notes a discrepancy regarding when the "bathroom conversation" occurred. Plaintiff fist states it was September 18, 2020, and later indicates it was in "March of 2020." (Doc. 31,

"bathroom conversation" – which Plaintiff recorded on his phone – ultimately became the basis of charges against him for the alleged intimidation of Butts. (*Id.*).

Shortly thereafter, in October 2020, Thomas and Butts broke up. (*Id.*). Butts began dating Isaiah Roberts, but in January 2021 (and unbeknownst to Roberts) Thomas and Butts rekindled their relationship. (*Id.*). Facing questions from Roberts about the calls and messages she was receiving from Thomas, Butts told Roberts that Thomas was "bothering or harassing" her "[i]n order to cover-up her affair." (*Id.*). Roberts reported the alleged harassment to either the Mobile County District Attorney's Office ("DA's Office") or the MPD on May 3, 2021. (*Id.*). In response to Roberts' report, ADA Herren and Detective Lott went to interview Butts on May 4, 2021. (*Id.*). At the time of the Butts interview, Thomas's assault case was ongoing, and an immunity hearing was scheduled for the following week – on May 11, 2021 – to determine whether Thomas acted in self-defense. (*Id.*). It was anticipated that Plaintiff, Butts and Thomas would each testify at the May 11 hearing. (*Id.*).[7]

According to Plaintiff, during the Butts interview, and in the following days, DA Rich, ADA Herren, Detective Lott and possibly others "conspired to fabricate and prosecute a felony criminal charge against Robert Rone in order to discredit his

---

PageID.294-95, 298). The undersigned attributes the March 2020 date to scrivener's error and accepts as true for current purposes that this conversation occurred September 18, 2020.

[7] The undersigned takes judicial notice of the attachments included with the DA Defendants' motion (Doc. 35-1, PageID.326-31), each of which are state court records from Plaintiff's underlying criminal case. *See Keith v. DeKalb County*, 749 F.3d 1034, 1041 n.18 (11th Cir. 2014) (taking judicial notice of state court documents). The undersigned finds said documents to be central to Plaintiff's claims and their authenticity is not otherwise challenged, such that giving them consideration here does not require conversion of this Rule 12(b)(6) motion into a motion for summary judgment. *United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 811 (11th Cir. 2015).

testimony, or prevent him from testifying, at Thomas Rone's immunity hearing on May 11, 2021." (*Id*.). Butts, whose affidavit describing this interview is included as an attachment to the SAC, states that "[d]uring the conversation [with ADA Herren and Detective Lott], I did not accuse Robert Rone of doing anything I thought was a crime." (Doc. 31-1). The Butts affidavit further provides:

3.    During the conversation, I was asked if Robert Rone had ever tried to get me to change my testimony regarding a 2019 assault case involving a fight between Thomas Rone and his cousin, Fernando.

4.    I answered that he had not but that he had approached me and Thomas Rone in a bathroom at Robert Rone's house and that Robert Rone recorded the conversation on his cell phone.

5.    At this point, Amanda Herren and Alex Lott were discussing possibly filing charges against Thomas Rone and I heard them say that they needed to charge Robert too.

6.    I explained to Amanda Herren and Alex Lott that Robert Rone had just asked some questions about what I had told the police when I was interviewed after the 2019 assault.

7.    During the conversation, I never said that Robert Rone threatened or intimidated me regarding my testimony in the 2019 assault case or regarding anything else.

8.    During the conversation, I never said that Robert Rone cornered me during the bathroom conversation or that he tried to get me to change my testimony regarding the 2019 assault case.

(*Id*.). The day after interviewing Butts, Detective Lott authored a report.[8] (Doc. 31). According to this report, during the interview, Butts alleged Plaintiff and Thomas "cornered" her in the bathroom on September 18, 2020 and "told her what to say in support of a claim of self-defense by Thomas." (*Id*.). Specifically, according to Lott's report, Plaintiff and Thomas "told her to say that Thomas was putting his pants on when Fernando attacked him again, causing Thomas to act in [s]elf-defense." (*Id*.).

---

[8] This report is not contained in the record, but Plaintiff identifies it as being entitled "Incident # M2210500411." (Doc. 31, PageID.296).

Lott's report also notes Plaintiff recorded the bathroom conversation. (*Id*.). However, no one sought to acquire or listen to the recording before initiating charges. (*Id*.).

Based at least in part on Butts' purported statements and Detective Lott's report, the DA's Office compiled and issued a charging document,[9] which was given to Detective Lott and used to obtain a warrant for Plaintiff's arrest on May 5, 2021. (Doc. 31, PageID.296-97; Doc. 35-1, PageID.330). Plaintiff asserts the charging document was based on false information because he did not intimidate Butts, Butts did not accuse him of any wrongdoing, and the statements attributed to Butts in Detective Lott's report were fabricated. (Docs. 31, 31-1). Detective Lott appeared as the complainant before Magistrate Shelly Lee in support of an arrest warrant based on Plaintiff's alleged intimidation of Butts and attempt to coerce her anticipated testimony at the May 11 immunity hearing, in violation of Ala. Code § 13A-010-123. (Doc. 35-1). Plaintiff avers Lott "and his co-conspirators" withheld exculpatory information (i.e., the recorded bathroom conversation) in an effort to obtain this warrant. (Doc. 31). Magistrate Lee authorized the arrest, which was executed the morning of May 7, 2021 at Plaintiff's home. (Docs. 31, 35-1). Thomas was also arrested this morning on separate charges. (Doc. 31). On June 17, 2021, Plaintiff's criminal case was dismissed after Mobile County District Judge Georgie Hardesty heard the bathroom recording and "found there was not probable cause in Rone's case." (*Id*.).

## III.   *Legal Standard*

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a

---

[9] Plaintiff explains the "charging document" referenced in his SAC is the "Case Review" document attached to the DA Defendants' motion. (Doc. 41, PageID.392; Doc. 35-1, PageID.330).

complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (citation omitted)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged … [This standard] asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 555, 557 (second brackets in original). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. At this stage, well-pleaded facts are accepted as true construed in the light most favorable to the non-movant. *Speaker v. United States HHS CDC & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) (citation omitted).

## IV.   *Analysis*

Both DA Defendants are named in Counts I, IV and V. (Doc. 31). DA Rich is the sole Defendant named in Count II. (*Id.*). The DA Defendants' motion argues all claims against them are due to be dismissed on absolute prosecutorial immunity grounds. (Docs. 35, 36). Alternatively, they assert qualified immunity on the federal

claims (Counts I & II) and state-agent immunity on state claims (Counts IV & V).

## A. <u>**Absolute Prosecutorial Immunity**</u>

In civil cases brought under 42 U.S.C. § 1983, "prosecutors have absolute immunity for all activities that are 'intimately associated with the judicial phase of the criminal process.'" *Rehberg v. Paulk*, 611 F.3d 828, 837 (11th Cir. 2010) (citations omitted). The Supreme Court employs a "functional approach" to determine whether an individual is entitled to absolute prosecutorial immunity. *Kassa v. Fulton Cnty., Ga.*, 40 F.4th 1289, 1292 (11th Cir. 2022) (citing *Burns v. Reed*, 500 U.S. 478, 486 (1991)). This fact-specific inquiry "looks to 'the nature of the function performed, not the identity of the action who performed it.'" *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (citation omitted). *See Kassa*, 40 F.4th at 1294 (explaining the functional approach "look[s] at whether immunity is justified for the specific function in question"). Those asserting absolute prosecutorial immunity's shield – here, the DA Defendants – bear the burden of establishing its application based on the function(s) in question. *Burns*, 500 U.S. at 486 (citation omitted).

Absolute immunity applies to a prosecutor's activities "in initiating a prosecution and in presenting the State's case." *Rehberg*, 611 F.3d at 837 (citing *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976)). Stated differently, this immunity will apply for "acts undertaken… in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the state." *Kassa*, 40 F.4th at 1293 (citation omitted). Prosecutors have been found to be immune for the initiation or continuation of a prosecution, appearances before grand juries or

other judicial proceedings, the examination of witnesses and presentation of evidence. *See Rehberg*, 611 F.3d at 837-38 (compiling examples). However, this immunity is not limited to conduct inside the courtroom and typically applies to "preparation for those activities, including the evaluation of evidence and information." *Ward v. Chafin*, 2023 U.S. App. LEXIS 7326, *6 (11th Cir. 2023) (per curiam) (unpublished). *See Buckley*, 509 U.S. at 273 (noting application of immunity to "the professional evaluation of evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made."). The Eleventh Circuit has extended absolute immunity to prosecutors for "filing an information without investigation, filing charges without jurisdiction, filing a baseless detainer, offering perjured testimony, suppressing exculpatory evidence, refusing to investigate complaints about the prison system, and threatening further criminal prosecutions." *Kassa*, 40 F.4th at 1293 (citations omitted).

However, if a prosecutor performs functions not associated with his or her role "as an advocate for the state," only qualified immunity is available. *Hart v. Hodges*, 587 F.3d 1288, 1295 (11th Cir. 2009) (citations omitted). For example, absolute immunity does not attach when prosecutors engage in certain investigative or administrative functions. *Hoffman v. Office of the State Atty.*, 793 F. App'x 945, 950 (11th Cir. 2019) (per curiam) (unpublished) (citations omitted). *See Rivera v. Leal*, 359 F.3d 1350 1353 (11th Cir. 2004) ("A prosecutor functions as an investigator when he searches for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested") (cleaned up)); *Rehberg*, 611 F.3d at 842 ("A

prosecutor loses the cloak of absolute immunity by stepping out of his role as an advocate and performing 'investigative' functions more commonly performed by law enforcement officers." (citation omitted)). Prosecutorial immunity also does not attach when an officer gives advice to police during a criminal investigation, when a prosecutor makes statements to the press or when a prosecutor acts as a complaining witness. *Van de Kamp v. Goldstein*, 555 U.S. 335, 343 (2009) (compiling cases).

The undersigned begins by setting out the functions and/or activities at issue. Plaintiff's allegations involve the DA Defendants' role(s) in: (1) the Butts interview, (2) an alleged conspiracy to present false testimony in support of a warrant for Plaintiff's arrest (with a goal of preventing his testimony at the May 11 immunity hearing) and misleading the magistrate in order to do so, (3) the compilation of a charging document and its issuance to Detective Lott in support of the warrant and (4) the actual initiation and prosecution of Plaintiff, which he asserts was undertaken despite a lack of probable cause. These functions are addressed in turn.

### 1. *The Butts Interview*

The DA Defendants characterize the Butts interview as one "conducted in preparation or anticipation of criminal prosecution." (Doc. 36, PageID.342). Pointing to *Mullinax v. McElhenney*, 817 F.2d 711 (11th Cir. 1987) and *Cook v. Houston Post*, 616 F.2d 791 (5th Cir. 1980), they argue absolute immunity applies to ADA Herren's role in the interview "since this led to Plaintiff's prosecution for intimidating a witness." (Doc. 36, PageID.342-43). As to DA Rich, they argue she was not personally involved in the interview, and point to *Van de Kamp* and *Hoffman*, for their shared

principle that "where a prosecutor is entitled to absolute immunity for certain conduct, a supervisory prosecutor should likewise be entitled to absolute immunity for supervision or training of that same conduct." 793 F. App'x at 954 (citing *Van de Kamp,* 555 U.S. at 345-46). (Doc. 36, PageID.341-45; Doc. 41, PageID.401). Plaintiff contends that ADA Herren's role in the Butts interview was not prosecutorial in nature – rather, he asserts she performed an investigative, advisory and/or police function by travelling with Detective Lott to Butts' residence "to interview and interrogate her." (Doc. 41, PageID.399-400). He further argues ADA Herren and Detective Lott's discussion of "how they could bring a charge" against Plaintiff (which occurred in Butts' presence) exemplifies ADA Herren giving legal advice to Detective Lott. (Doc. 41, PageID.401; Doc. 31-1, PageID.309). Plaintiff points to *Rehberg*, 611 F.3d at 838 and *Burns*, 500 U.S. at 492-93 for support. As to ADA Herren, both arguments fail.

The context of the Butts interview is important, and several factual allegations need be kept in mind. First, at the time of the interview, Thomas's assault case was ongoing, and the self-defense immunity hearing was set for the following week. (Doc. 31). Second, it was anticipated Butts would be called as a witness during this proceeding and reasonable to infer she would likely be a witness at Thomas's impending trial. (*Id*.). Third, ADA Herren and Detective Lott went to interview Butts in response to allegations made by Roberts that Thomas was harassing Butts. (*Id*.). And fourth, when ADA Herren and Detective Lott walked into interview, they had no reason to suspect Plaintiff of any wrongdoing. (*Id*.).

The DA Defendants' argument that ADA Herren's role in the Butts interview was prosecutorial because it was "conducted in preparation or anticipation of criminal prosecution," and "led to Plaintiff's prosecution" lacks merit. (Doc. 36, PageID.342). Plaintiff alleges that when ADA Herren and Detective Lott walked into the Butts interview, they had no reason to believe he had committed any crime – rather, they were there to discuss the allegations of harassment made by Roberts. (Doc. 31, PageID.295). Thus, ADA Herren could not have sought to interview Butts "in preparation or anticipation of" Plaintiff's criminal prosecution, because there was no criminal prosecution to prepare for or anticipate at that time.

However, Plaintiff's assertion that ADA Herren was engaged in advisory, investigative and/or police functions is equally unpersuasive. First, the facts alleged do not support that ADA Herren engaged in the advisory function of "providing legal advice to the police" in the same vein as the prosecutor at issue in *Burns*. 500 U.S. at 492-93. In *Burns*, the prosecutor was found not entitled to absolute immunity for giving legal advice to officers regarding the use of hypnosis and existence of probable cause to make an arrest. *Id*. Put differently, the *Burns* prosecutor advised officers on what they could or could not do during an interview and subsequently advised whether there was sufficient probable cause to make an arrest based on the fruits of said interview. *Id*. Plaintiff does not assert ADA Herren advised Detective Lott in the same way – rather, he asserts the "legal advice" came in the form of the two "discussing… how they could bring a charge against Rone." (Doc. 41, PageID.401). (*See* Doc. 31-1, PageID.309). Such a discussion is more akin to the decision to initiate

a prosecution against Plaintiff, which is well within a prosecutor's function. *Imbler*, 424 U.S. at 421. *See In re Wild*, 994 F.3d 1244, 1260 (11th Cir. 2021) (describing determinations of how, whether and when to initiate criminal charges as the "essence" or prosecutorial discretion). Second, ADA Herren was not engaged in an investigatory and/or police function during the interview – at least as it relates to *Plaintiff's* prosecution – because, as previously noted, he was not under any manner of investigation at the time. Accordingly, absent any preconceived notion that Plaintiff had committed a crime, there would not be any "clues and corroboration" to search for as an officer typically would. *Rivera*, 359 F.3d at 1353.

Both parties fail to view the circumstances surrounding the Butts interview in their totality by focusing solely on ADA Herren's function as it relates to Plaintiff's subsequent prosecution. But the reason ADA Herren and Detective Lott were there in the first place was to follow up on the allegation made by Roberts that Thomas was harassing Butts. Put differently, Roberts had alleged that Thomas (the criminal defendant) was harassing Butts (a key witness in his case). (Doc. 31, PageID.295, 298; Doc. 31-1; Doc. 36, PageID.342; Doc. 41, PageID.399). Thus, ADA Herren's role in this interview is more properly evaluated through the lens of Thomas Rone's prosecution, and when viewed through this lens, it is clear that ADA Herren was acting within her prosecutorial role. Prosecutorial immunity applies not only to the initiation of criminal prosecution, but also to its pursuit. *Imbler*, 424 U.S. at 431. Here, determining if and how Butts' testimony may have been influenced or otherwise affected by the alleged harassment is well within the scope of Herren's function as a

prosecutor. *See id.* at n.32 (noting out of court efforts to control the presentation of witness testimony to be within the function of a government advocate), *id.* at n.33 (noting specifically "which witnesses to call, and what other evidence to present" as decisions made in the course of a prosecutor's duties) and *Buckley*, 509 U.S. at 273 (distinguishing "advocate's role in evaluating evidence and interviewing witnesses as her prepares for trial" from investigatory function of "searching for the clues and corroboration that might give him probable cause.").[10] Accordingly, the undersigned finds ADA Herren is entitled to immunity for her role in the Butts interview.

As to DA Rich, Plaintiff does not allege her direct involvement in the Butts interview. (Doc. 31). Rather, he asserts ADA Herren took part in the interview "with permission or direction" from DA Rich, and that it would be "inconceivable" for ADA Herren to have done so without DA Rich's approval. (Doc. 31, PageID.298; Doc. 41, PageID.401). Not only is such an allegation conclusory on its face, but Plaintiff's attempt to impute liability onto DA Rich for failing to supervise ADA Herren's role in this interview is foreclosed by *Van de Kamp,* 555 U.S. at 345-46 and *Hoffman*, 793 F. App'x at 954, and DA Rich is entitled to share in the absolute prosecutorial immunity afforded to ADA Herren.

### 2. *Conspiracy to Present False Testimony*

Plaintiff alleges that DA Rich, ADA Herren, Detective Lott and possibly others

---

[10] The parties also fail to distinguish the roles played by ADA Herren and Detective Lott from one another. While these two Defendants may have gone to interview Butts together, their respective function(s) in doing so need not be the same. For example, Detective Lott – as the investigating officer assigned to Thomas Rone's case – could have been performing police and/or investigative functions (i.e., determining whether Thomas Rone had committed a crime by harassing Butts) at the same time ADA Herren – as a prosecutor – performed a prosecutorial function (i.e., seeking to determine whether a witness had been tampered with or otherwise affected by the alleged harassment).

in the DA's Office (i.e., the fictitious defendants implicated in Count I) "conspired to fabricate and prosecute a felony criminal charge" against Plaintiff in order to prevent his testimony at the May 11 immunity hearing. (Doc. 31, PageID.296). Plaintiff alleges the conspiracy went like this: (1) during the Butts interview, ADA Herren decided to initiate charges against Plaintiff (after "discussing" this decision with Detective Lott), despite a lack of probable cause, (2) after the interview, Detective Lott prepared a report including false statements attributed to Butts, (3) while ADA Herren (and possibly others) – with either the consent or acquiescence of DA Rich – compiled a charging document based in part on the same false statements, (4) the charging document was given to Detective Lott, (5) who took it to Magistrate Lee in support of a warrant, and (6) because Detective Lott knew the statements were false, he misled the Magistrate, which (7) resulted in the malicious prosecution asserted by Count I. (*See* Doc. 31). The DA Defendants argue that, even if true, their conduct in this process remains protected by absolute prosecutorial immunity pursuant to *Hart v. Hodges*, 587 F.3d 1288 (11th Cir. 2009), *Jones v. Cannon*, 174 F.3d 1271 (11th Cir. 1999), *Rehberg*, 611 F.3d 828, *Rowe v. Fort Lauderdale,* 279 F.3d 1271 (11th Cir. 2002) and *Mastroianni v. Bowers*, 173 F.3d 1363 (11th Cir. 1999). (Doc. 36, PageID.343-44). The undersigned agrees.

The decision to initiate charges against a criminal defendant is clearly a prosecutorial function. *Imbler*, 424 U.S. at 431. And the motivations for doing so are not relevant to the functional analysis. *See Captain Jack's Crab Shack, Inc. v. Cooke,* 2022 U.S. App. LEXIS 26523, *24-25 (11th Cir. 2022) (per curiam) (unpublished)

("While a prosecutor's motives may be relevant to whether a civil rights plaintiff has stated a claim, they are not relevant to determining whether absolute immunity applies."). Further, compilation and issuance of charging documents or obtaining a warrant for Plaintiff's arrest are actions fitting squarely within a prosecutor's function. *Imbler*, 424 U.S. at 431. *See Watkins v. Dubreuil*, 820 F. App'x 940, 945 (11th Cir. 2020) (per curiam) (unpublished) ("A prosecutor is entitled to absolute immunity for… the filing of charges") (citing *Hart*, 587 F.3d at 1295)). This remains the case even if a prosecutor's actions are predicated upon false statements. *See Jarallah v. Simmons*, 191 F. App'x 918, 921 (11th Cir. 2006) (per curiam) (affirming dismissal on prosecutorial immunity grounds where "complaint alleged defendants initiated baseless charges against him"); *Hoffman*, 793 F. App'x at 950 (no liability for prosecutor's initiation and continuation of a prosecution "even assuming he lacked probable cause at the outset and pursued the prosecutions after receiving overwhelming exculpatory information"); *Rowe v. Fort Lauderdale*, 279 F.3d 1271, 1279-80 (11th Cir. 2002) (noting prosecutorial immunity applies "even if [a prosecutor] knowingly proffered perjured testimony and fabricated exhibits at trial"); *Hart*, 587 F.3d at 1295 (compiling cases).

Each of the actions allegedly taken by ADA Herren in pursuit of this conspiracy are, by their function(s), prosecutorial in nature.[11] Moreover, the Eleventh Circuit

---

[11] To the extent Plaintiff alleges ADA Herren's direct involvement in the fabrication of Butts' statement itself, the undersigned finds persuasive the *Rehberg* Court's distinction between "cases involv[ing] a particular discrete item of physical or expert evidence that was falsely created," and that Court's decision to extend absolute immunity to prosecutors "accused of fabricating together only the testimony Paulk later gave to the grand jury." 611 F.3d at 842. Here, the fabrication alleged by Plaintiff does not involve any physical or expert evidence; rather, it is solely Butts' statements that were allegedly fabricated in Detective Lott's report.

has made plain that "absolute immunity applie[s] equally both to the false testimony itself and to the alleged conspiracies to present false testimony," because to allow otherwise "would be to permit through the back door what is prohibited through the front." *Rehberg*, 611 F.3d at 841 (citing *Jones*, 174 F.3d at 1289)). *See Rowe*, 279 F.3d at 1282 ("It would be cold comfort for a prosecutor to know that he is absolutely immune from direct liability for actions taken as a prosecutor, if those same actions could be used to prove him liable on a conspiracy theory involving the conduct for which he was not immune… [t]hat is why acts for which a prosecutor enjoys absolute immunity may not be considered as evidence of the prosecutor's membership in a conspiracy for which the prosecutor does not have immunity."). Accordingly, ADA Herren is entitled to prosecutorial immunity for any role she may have had in the presentation of false testimony, or a conspiracy to do the same.

As to DA Rich, Plaintiff's allegations are again based largely upon her supervisory role of ADA Herren. (*See* Doc. 31). And because ADA Herren is entitled to prosecutorial immunity for her role in this alleged conspiracy, DA Rich's liability under this theory is again foreclosed by *Van de Kamp* and *Hoffman*. 555 U.S. at 345-46; 793 F. App'x at 954. To the extent Plaintiff asserts her direct involvement in this alleged conspiracy, it is for the same acts that are protected by immunity (i.e., obtaining a warrant, issuing charging documents or allowing either to occur). (*Id.*). Accordingly, DA Rich is entitled to prosecutorial immunity.

### 3. *Compilation of a Charging Document, Obtaining a Warrant and Initiating Plaintiff's Prosecution*

As previously stated, each of these actions are prosecutorial by their nature.

*Imbler*, 424 U.S. at 431. Accordingly, both DA Rich and ADA Herren will be entitled to prosecutorial immunity for their role(s) in the same. Plaintiff makes several additional arguments intertwined with these functions that require mentioning here.

First, Plaintiff stresses there was never probable cause to have him arrested. (Doc. 31, PageID.298-302). Pointing to the *Buckley* Court's statement that "[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested," 509 U.S. at 274, he argues that because probable cause was lacking *in toto*, neither ADA Herren nor DA Rich ever performed a prosecutorial function because absent probable cause, a prosecutor categorically cannot be considered an "advocate for the state." (Doc. 41, PageID.397-404). The undersigned does not read *Buckley* to stand for such a sweeping proposition. Indeed, that Court went on to clarify that there is "a common-law tradition of immunity for a prosecutor's decision to bring an indictment, whether he has probable cause or not." 509 U.S. at 274, n.5. *See also, Hoffman*, 793 F. App'x at 950 ("[U]nder our binding caselaw, [a prosecutor] cannot be held liable for initiating and continuing prosecutions against the plaintiffs, even assuming he lacked probable cause at the outset and pursued the prosecutions after receiving overwhelming exculpatory evidence.") (citing *Hart*, 587 F.3d at 1295)).

Second, Plaintiff argues ADA Herren essentially acted as a complaining witness by compiling the charging document that was then given to Detective Lott in support of a warrant because "it served the same purpose" as a complaining witness would. (Doc. 41, PageID.400). Under *Kalina*, a prosecutor serves as a complaining

witness – and thus, acts outside of a prosecutor's function – when she "personally attest[s] to the truth" of relevant allegations in support of a warrant. 522 U.S. at 129. The "critical question," per *Kalina*, is "whether [the prosecutor] was acting as a complaining witness rather than a lawyer when she executed the certification 'under penalty of perjury.'" *Id*. Here, the complaining witness function was performed by Detective Lott, not ADA Herren. (Doc. 35-1; Doc. 31, PageID.301; Doc. 41, PageID.391). It was Detective Lott who appeared as the complainant before Magistrate Lee, and he was the one who signed the certification under penalty of perjury. (*See* Doc. 35-1, PageID.326). Merely compiling a charging document is not the same as "personally attesting to the truth" of the allegations set out therein "under penalty of perjury." *Kalina*, 522 U.S. at 129. The charging document itself make no affirmation of its truthfulness and contains no penalty of perjury language. (*See* Doc. 35-1, PageID.330). The fact that ADA Herren may have authored the charging document, which was then given to Detective Lott in support of a warrant, does not render ADA Herren, as the document's author, to be a complaining witness under *Kalina*. Accordingly, Plaintiff has failed to establish that ADA Herren functioned as a complaining witness.

Third, Plaintiff faults the DA Defendants for not seeking out the recording of the bathroom conversation before initiating his prosecution, as it was "readily available" and "would have proven Rone's innocence." (Doc. 31, PageID.297-99). Plaintiff avers this failure is tantamount to "intentionally disregarding pertinent exculpatory evidence." (*Id*.). However, it is not a prosecutor's function to corroborate

witness statements or seek out potentially exculpatory information prior to the initiation of a prosecution – indeed, had the DA Defendants done what Plaintiff now criticizes them for not doing, they would have performed an investigative function typically reserved for law enforcement.[12] *See Rivera*, 359 F.3d at 1353 ("A prosecutor functions as an investigator when he 'searches for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested.'" (citing *Buckley*, 509 U.S. at 273)). Accordingly, the DA Defendants are entitled to immunity for initiating Plaintiff's prosecution prior to obtaining the recording.

In sum, the undersigned finds ADA Herren is entitled to absolute prosecutorial immunity for each of the activities in which she was involved. Further, because DA Rich's liability as to each of these activities is tied to her role as ADA Herren's supervisor, the undersigned finds DA Rich to also be entitled to prosecutorial immunity for her involvement in the same pursuant to *Van de Kamp* and *Hoffman*. 555 U.S. at 345-46; 793 F. App'x at 954.

**B.  <u>Count II: Supervisory Liability Claim</u>**

To the extent Plaintiff seeks to hold DA Rich liable as ADA Herren's supervisor for the activities discussed above, such claims are foreclosed by *Van de Kamp* and *Hoffman*. 555 U.S. at 345-46; 793 F. App'x at 954. However, Plaintiff's Count II appears to cast a wider net than simply alleging DA Rich failed to supervise ADA Herren. (*See* Doc. 31, PageID.303). Rather, this cause of action alleges DA Rich "implement and condoned" an official policy, custom or practice of allowing her

---

[12] The same rationale applies to Plaintiff's assertion that ADA Herren should have disbelieved Butts because she was an unreliable witness. (*See* Doc. 31, PageID.297).

subordinates to determine probable cause "without first having a neutral and detached judge or magistrate review the facts." (*Id*.). Specifically, Plaintiff maintains the DA's Office would determine probable cause and issue charging documents to law enforcement, who would then present the documents to "untrained and unqualified" magistrates who had been "instructed to issue a warrant if a charging document was presented to them," such that the magistrates merely acted as a "rubber stamp" for the DA's Office. (Doc. 31, PageID.300). Plaintiff also characterizes this as a "policy of bypassing a neutral and detached Magistrate or Judge and allowing the [DA's] Office to control the warrant process." (Doc. 41, PageID.394). Plaintiff alleges DA Rich is the "ultimate policymaker" behind this policy, custom or practice, which has resulted in deliberate indifference to citizen's constitutional rights, including his own. (Doc. 31, PageID.287, 303).

The standard for imposing supervisory liability in § 1983 actions is "extremely rigorous." *Piazza v. Jefferson Cty.*, 923 F.3d 947, 957 (11th Cir. 2019) (citation omitted). As the Eleventh Circuit explained in *Gray v. Bostic*:

> Supervisory officials cannot be held liable under § 1983 for the unconstitutional actions of their subordinates based on respondeat superior liability. *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999). Instead, supervisors can be held personally liable when either (1) the supervisor personally participates in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor and the alleged constitutional violation. *Id.*

458 F.3d 1295, 1308 (11th Cir. 2006) (footnote omitted). Absent allegations of direct or personal participation in the alleged constitutional violation – of which there are minimal concerning DA Rich (and such allegations are otherwise cloaked in

prosecutorial immunity, explained *supra*.) – Plaintiff must establish a causal connection between Rich's actions and the alleged constitutional violation(s). *Piazza*, 923 F.3d at 957. To establish the requisite casual connection, a plaintiff must "demonstrate[] that a supervisor's policy or custom resulted in 'deliberate indifference to constitutional rights.'" *Id.* (citation and footnote omitted). A plaintiff can also point to the absence of a policy resulting in a violation of constitutional rights. *Id.* (citation omitted). "Either way, though, to prove that a policy or its absence caused a constitutional harm, a plaintiff must point to multiple incidents, or multiple reports of prior misconduct by a particular employee." *Id.* (internal citations omitted). *See Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) ("The necessary causal connection can be established 'when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.'"). Further, a causal connection can be established "when facts support 'an inference that the supervisor directed the subordinates to act unlawfully of knew that the subordinates would act unlawfully and failed to stop them from doing so.'" *Cottone*, 326 F.2d at 1360 (citation omitted)).

The DA Defendants contend Plaintiff fails to establish a supervisory liability claim against DA Rich for three reasons. First, they argue Plaintiff fails to plausibly allege DA Rich's personal participation in any alleged constitutional violation(s), and that to the extent Plaintiff has done so, such allegations are conclusory and insufficient pursuant to *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013). (Doc. 36, PageID.350-51). Second, they argue Plaintiff has not alleged facts sufficient to

indicate a pattern of abuses of which DA Rich was on notice and otherwise ignored. (*Id.*). And third, they characterize Plaintiff as "alleg[ing] only that Rich had a policy of being aware that magistrates were untrained and unqualified," and argue that because DA Rich has no control over the training of magistrates – who are part of a separate branch of government – she cannot be liable for failure to supervise. (*Id.*). Defendants are correct on each point.

Plaintiff asserts a causal connection exists here because it is reasonable to infer DA Rich "formulated and condoned the policy of bypassing a neutral and detached Magistrate of Judge and allowing the [DA's] Office to control the warrant process." (Doc. 41, PageID.394). However, Plaintiff offers no facts to support this inference apart from a conclusory assertion that it is "inconceivable" for an ADA like Herren to have taken such actions "without approval" from Rich. (Doc. 41, PageID.410). Plaintiff essentially argues DA Rich is causally connected solely by virtue of her role as the DA, and such an assertion is insufficient to make the requisite connection. *See McCullough v. Finley,* 907 F.3d 1324, 1334 (11th Cir. 2018) (explaining that "allegations that government officials were the 'principal architect' and 'instrument[]' behind an unlawful policy, without supporting allegations, are conclusory"); *Franklin*, 738 F.3d at 1250-51. This alone is a sufficient basis to dismiss Count II. However, Plaintiff also fails to state a supervisory liability claim because "[a] single incident of a constitutional violation is insufficient to prove a policy or custom." *Piazza*, 923 F.3d at 957. The allegations of Plaintiff's SAC relate solely to the single incident in which he was involved, which is insufficient to establish a custom or

practice, let alone one which could impute liability onto DA Rich.

**C.  State Law Claims (Counts IV & V)**

Plaintiff's state law claims for outrage and civil conspiracy are also due to be dismissed on immunity grounds. Both causes of action are predicated upon the same facts implicated by Plaintiff's federal claims, and the Alabama Supreme Court has held that the immunity afforded to prosecutors under state law is "at least as broad as immunity under a § 1983 action." *Bogle v. Galanos*, 503 So. 2d 1217, 1219 (Ala. 1984). *See also*, *Walker v. Tillman*, 55 So. 3d 1214, 1217 (Ala. Ct. Civ. App. 2010) (same); *Pardue v. City of Saraland*, 2011 U.S. Dist. LEXIS 4184, *18, n.3 (S.D. Ala. 2011) (same). Thus, because the DA Defendants are entitled to absolute prosecutorial immunity for their alleged involvement in the federal causes of action as discussed above, they will similarly be entitled to absolute immunity for the state law claims.

*V. Conclusion*

For the reasons stated herein, the undersigned **RECOMMENDS** the DA Defendants' motion to dismiss be **GRANTED**, such that Count II be **DISMISSED with prejudice** in its entirety and that Counts I, IV, and V be **DISMISSED with prejudice** as it relates to Defendants Amanda Herren and Ashley Rich.

**NOTICE OF RIGHT TO FILE OBJECTIONS**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within 14 days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order

based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 9th day of August 2023.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**